HAWTHORNE, Justice.
The two defendants were tried under a charge of unlawfully possessing and having under their control narcotic drugs (20 tablets of morphine and two tablets of dilaudid), a crime denounced by R.S. 40:962. The defendant Daniel Edward Mcllvaine was found guilty as charged and sentenced to serve 15 years at hard labor in the penitentiary. The defendant Jackie Krohn was found guilty of attempted possession of narcotics and sentenced to a term of seven and a half years at hard labor in the penitentiary. Both have appealed, relying on several bills of exception.
For an understanding of the issues here involved it is necessary to set out briefly the facts and circumstances surrounding the arrest of the defendants, the.search of their home, and the seizure of the narcotics, and also various other facts brought out at the trial or given in the trial judge’s per curiams.
About 11:00 o’clock on the morning of March 19, 1962, officers of the New Orleans police department, armed with search warrants for 3117 North Derbigny Street and for a certain Chevrolet automobile and a certain Ford automobile, and accompanied by state' troopers, began a surveillance of the North Derbigny ' Street' address, the *654 home of the two defendants, and also began to watch 4717 Shalimar Drive, the residence of one O. S. Roberson. About 3 :00 o’clock in the afternoon the police saw the defendant Mcllvaine drive up to 3117 North Derbigny in a 1959 Ford and go into the house. At this time he was wearing gray pants and a gray work shirt. No one else was seen to leave or enter these premises during the rest of the afternoon. Officers watching the Shalimar Drive address observed a 1956 Chevrolet back out of the driveway at about 8:00 o’clock that night. The police followed the Chevrolet and soon saw that it was headed in the direction of the North Derbigny Street address. Officers stopped this car about one-half block from the North Derbigny Street address, and recognized its two occupants as Jackie Krohn, one of the defendants here, and O. S. Roberson. Both Jackie Krohn and Roberson were at this time placed under arrest by the police, the arrest being made without a warrant. After this arrest the officers went to 3117 North Derbigny with the search warrants for these premises which they had in their possession. One of the officers knocked on the door, and when the defendant Mcllvaine appeared, the officer identified himself as such, placed Mcllvaine under arrest, also without a warrant, and served him with the search warrant. Both Jackie Krohn and Roberson were brought to this dwelling, and the police made a search of the premises. In the bedroom the officers found draped over a chair the gray work shirt which Mcllvaine _ had been wearing when he entered the home that afternoon. In the pocket of this^ shirt one of the officers found the narcotics,, described in the bill of information. Mcllvaine admitted that the shirt was his, but denied any knowledge of the narcotics.
The defendants Jackie Krohn and Daniel Mcllvaine were living together as husband and wife at 3117 North Derbigny, where the narcotics were found. This was a half-double with only one bedroom, and no one lived there except the two defendants. Both defendants were shown to be users of narcotic drugs, and both had fresh hypodermic needle marks on their arms on the night of their arrest. Evidence adduced under the motion to suppress taken before trial disclosed that one or more members of the narcotic squad who participated in the operation knew the two defendants were narcotic addicts, having arrested or “handled” them in this connection on other occasions, and that the officers were fully aware that the two defendants lived at 3117 North Derbigny Street.
The first bill of exception was taken to the trial judge’s overruling of defendants’ motion to suppress certain evidence relied upon by the State for conviction, namely, the 20 morphine tablets and the two dilaudid tablets. It is the contention of defendants that this motion should have been sustained *656 (1) because defendants had been arrested without a warrant and (2) because the search warrant under which the narcotics were found and seized by the police at 3117 North Derbigny Street was invalid as having been issued upon information and belief and without probable cause, in violation of rights guaranteed to the defendants under Article 1, Section 7, of the Louisiana Constitution of 1921, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.
Counsel for defendants also argues in brief that the search warrant is defective in form. The application for the search warrant and the search warrant itself under which the narcotics were seized are in evidence in this case. The application and sworn statement executed by Officer Justin Favaloro for the issuance of the search warrant, and the search warrant itself, recite that Favaloro and two other named officers appeared before the judge who issued the warrant, whereas actually only Favaloro appeared before the judge and made oath for the issuance of the warrant. It is immaterial that only one of the three officers named in the application and in the search warrant appeared before the judge, because under Article 42 of our Code of Criminal Procedure a search warrant may be issued upon “the oath of a credible person”. No contention is made by counsel that the officer who actually took the oath for the issuance of the search warrant is not a “credible person”.
Both the Fourth Amendment to the United States Constitution and Article 1, Section 7, of the Louisiana Constitution provide that no search warrant shall issue except upon probable cause; and it is now settled that the provisions of the Fourth Amendment are applicable to the states through the due process clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Under the provisions of the Louisiana Code of Criminal Procedure a judge may cause a search warrant to issue whenever it is made to appear to his satisfaction by the oath of a credible person that there exists a reasonable cause to search for marijuana, opium, heroin, and other narcotics illegally possessed. La.Code Crim.Proc. Arts. 41, 42, 43(5).
It is defendants’ contention that because the search warrant in this case was issued upon information furnished by someone other than the person who appeared before the judge, there did not exist probable cause for the issuance of the warrant', and that consequently the evidence seized thereunder was illegally obtained and should not have been admitted at the trial of the case.
The sworn application for the search warrant made by Police Officer Justin Favaloro recites that a warrant should be *658 issued for the premises 3117 North Derbigny Street “for the purpose of seizing the following described property * * * narcotics — opium derivatives and synthetic drugs and burglary tools”. It further recites that the application is made for the following purpose: “The above officers received information from a confidential and reliable source that there is narcotics and burglary tools concealed in the premises of 3117 No. Derbigny Street.”
At the trial of the motion to suppress, the officer who made sworn application for the warrant testified that the information received by him that narcotics and burglary tools were concealed at 3117 North Derbigny Street came from a person who was known to him, who had given him information in other cases, and whose information he had always found reliable.
The first matter for our determination is the meaning of "probable cause” as that term is used in the Constitutions; or, in other words, we must ascertain what is “probable cause” which justified the issuance of a search warrant.
“ * * * The test of probable cause for issuance [of a search warrant] has been said to be that, if the facts'and circumstances before the issuing officer are such as to warrant a man of prudence and caution in believing that the offense has been, or is being, committed on the premises, it is sufficient. Thus it is obvious that the term does not mean ‘actual and positive cause; ’ nor does it import absolute certainty, since the determination of the existence of probable cause is not concerned with the question of whether or not the offense charged has in fact been, or is being, committed but only whether or not affiant has reasonable grounds so to believe. The requirement is less than certainty or proof, but more than suspicion or possibility.
“In this connection, ‘probable cause’ and ‘reasonable cause’ have been, held interchangeable and synonymous. So, the affidavit must show facts and circumstances which would, to any reasonable mind, justify the belief that the execution of the warrant would result in a verdict of guilty. It is not enough that facts subsequently shown would have sufficed to show probable cause, since it may exist, even though the facts do not later justify it.” 79 C.J.S. Searches and Seizures § 74, p. 864.
“The probable cause which will justify the issuance of a search warrant is less than certainty or proof, but more than suspicion or possibility. It may refer to something less than evidence which would result in a conviction, and it may be founded upon evidence that would not even be admissible at a trial.” Varón, Searches, Seizures and Immunities, v. 1, p. 267 (1961)..
As to our Louisiana constitutional provision on the issuance of search warrants, this court said in State v. Norris, 161 La. 988, 109 So. 787: *660 «* * * The constitutional inhibition against the issuance of search warrants .without probable cause does not undertake to command the lawmaker to establish a definition or formula for determining what shall be ‘probable cause.’ It merely forbids the lawmaker to authorize the issuing of search warrants except upon probable cause. As to what is probable cause, in a given case, is left, largely and necessarily, to the judgment and discretion of the judge or magistrate having authority to issue the warrant. * * * The statute [Act 39, Extra Session of 1921] does not contemplate that the affiants, in such cases, shall perform the function of judging and determining what is ‘probable cause,’ but requires that the affiants shall swear to the facts and let the judge or magistrate determine whether there is 'probable cause’ for the issuance of a warrant.”
The question to be determined is whether the facts and circumstances before the judge who issued the warrant were sufficient to justify a man of prudence and caution in believing that an offense had beeor was being committed on the premises described in the search warrant, even though the officer who made the affidavit was requesting the warrant upon information received from another person.
The fact that the information was hearsay is not, of itself, a reason for the j,udge to refuse to issue the warrant, for evidence which may be inadmissible at the trial of a criminal case, such as hearsay, may be relied upon to show probable cause to believe that an offense is being or has been committed. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. In the Draper case the United States Supreme Court observed that if the person supplying the hearsay has always been found to be reliable, probable cause exists.
In the instant case the sworn request for the warrant states that the officer applying for it had received information from a confidential and reliable source that there were narcotics concealed at the place named in the application. Under these circumstances it was reasonable for the judge who issued the warrant to conclude that the narcotics were probably present at the place named in the warrant, and this is sufficient. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. The search warrant therefore was validly issued upon probable cause, and the trial judge properly overruled the motion to suppress the evidence seized in the search made by authority of the warrant. In short, the narcotics in the instant case were legally seized, and no constitutional rights of the accused were denied to them by the admission of these narcotics in evidence.
*662 We shall not discuss defendants’ contention that the evidence was inadmissible because the arrest of the defendants, having been made without a warrant, was illegal, nor shall we discuss the State’s argument that the arrest, although made without a warrant, was valid under the provisions of Article 60(4) of the Code of Criminal Procedure because the officers had reasonable cause to believe that a felony had been committed and to believe that these persons had committed it. Discussion of these contentions is unnecessary because we have concluded that these narcotics were seized under and by virtue of a valid search warrant. Even if we should concede that the arrest was illegal, its illegality would not render inadmissible in evidence the narcotics which were seized under a valid search warrant.
Bills'of Exception Nos. 4, 5, 6, 7, and 8 all involve the judge’s rulings on the admissibility of the evidence seized under the search warrant. Since the objections to the admissibility of this evidence are the same as those urged in Bill No. 1, no discussion of these bills is required.
Bills Nos. 2, 3, and 9 were taken in connection with an assertion in the district attorney’s opening statement and with the testimony adduced in support of this assertion. In his opening statement the district attorney said that the State would prove that both defendants were users of narcotics and addicts; and to prove this the State offered in evidence the testimony of a police officer, qualified by the State as an expert on narcotics, that on the arm of each defendant there were hypodermic needle marks called “track marks” which characteristically accumulate from the use of narcotic injections by needle. Defendants’ objection to the statement of the district attorney and to the testimony was that the State was attempting to prove bad character of the accused when the accused themselves had not put their characters at issue.
It is our view that the statement of the district attorney was proper and that the testimony was properly admitted to show guilty knowledge. La.Code Crim.Proc. Art. 446; State v. Harris, 232 La. 911, 95 So.2d 496; State v. Nicolosi, 228 La. 65, 81 So.2d 771; State v. Johnson, 228 La. 317, 82 So.2d 24; State v. Maney, 242 La. 223, 135 So.2d 473.
Defendants seem to concede that the holding of this court in State v. Johnson, supra, is controlling here; but they contend that this court erred in that case in holding that guilty knowledge is an essential ingredient of the crime of possession of narcotic drugs, and urge that this holding should not be followed in the instant case.
The Johnson case is not the only-one in our jurisprudence in which we have held that guilty knowledge is an essential! element of the crime of possession of nar *664 cotíes or narcotic paraphernalia. See State v. Harris, State v. Maney, and State v. Nicolosi, supra. In State v. Maney we specifically refused to overrule the holding of this court in State v. Johnson, and defendants in the instant case have not succeeded in convincing us that we erred in State v. Johnson and the other cases cited above.
The last bill for our consideration, Bill No. 10, was taken to the overruling of defendants’ motion for a new trial. The only new issue raised in this bill is the contention that there was no evidence whatever to prove that the defendant Jackie Krohn at any time had possession of the narcotics •described in the bill of information. All of the testimony taken at the trial is attached to this bill.
Under Article 7, Section 10, of our Constitution the appellate jurisdiction of this court in criminal matters extends to questions of law only. It is well settled that this court cannot pass upon the sufficiency of the evidence relating to the question of guilt or innocence of a person convicted in a criminal prosecution, and that where there is some evidence to sustain the conviction, no matter how little, the Supreme Court cannot pass on its sufficiency, since that is a question of fact which comes within the exclusive province of the trial judge and jury. It is only where there is no evidence at all to sustain the conviction that a question of law is presented which is reviewable by this court. State v. Steuer, 138 La. 303, 70 So. 233; State v. White, 207 La. 695, 21 So.2d 877; State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Vallery, 214 La. 495, 38 So.2d 148; State v. Heiman, 227 La. 235, 79 So.2d 78; State v. La Borde, 234 La. 28, 99 So.2d 11; see State v. Haddad, 221 La. 337, 59 So.2d 411.
Defendant Jackie Krohn was adjudged guilty of attempted possession of narcotics, and if there is any evidence whatever, no matter how little, to support this conviction, this court has nothing to review. At the time of this defendant’s arrest, she was apparently on her way to her home at 3117 North Derbigny Street when she was arrested one-half block away. She was shown to be a user of narcotic drugs, having fresh hypodermic needle marks on her arm on the night of her arrest. The narcotics were found at her home, where only she and the other defendant, Mcllvaine, lived. Thus, since there was some evidence upon which to base her conviction, there is nothing before this court to review.
The convictions and sentences are affirmed.